Bentley G. Stromberg ISB No. 3737
bstromberg@clbrmc.com
Sonyalee R. Nutsch ISB No. 6189
snutsch@clbrmc.com
Tully FitzMaurice, ISB No. 10649
tfitzmaurice@clbrmc.com
CLEMENTS, BROWN & McNICHOLS, P.A.
Attorneys at Law
Post Office Box 1510
321 13th Street
Lewiston, Idaho 83501
(208) 743-6538
(208) 746-0753 (Facsimile)

      Attorneys for Defendants University of Idaho,
      Mark Adams, Jerrold Long and Johanna Kalb

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SHAAKIRRAH R. SANDERS, | ) | |
| | ) | Case No: 3:19-CV-00225-BLW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DEFENDANTS' RESPONSE IN |
| | ) | OPPOSITION TO PLAINTIFF'S |
| THE UNIVERSITY OF IDAHO, a | ) | MOTION FOR SANCTIONS (DKT. 149) |
| public university governed by the | ) | |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY OF IDAHO aka the | ) | |
| STATE BOARD OF EDUCATION, | ) | |
| an executive department of the STATE | ) | |
| OF IDAHO, and MARK ADAMS, | ) | |
| former Dean of the College of Law, in | ) | |
| his individual capacity only, JERROLD | ) | |
| LONG, former term Dean of the College | ) | |
| of Law, in his individual capacity only, | ) | |
| and JOHANNA KALB, current Dean of | ) | |
| the College of Law, in her official | ) | |
| capacity only, | ) | |
| | ) | |
| _____Defendants._____ | ) | |

## I.

## INTRODUCTION

Shaakirrah R. Sanders ("Plaintiff") is an African-American woman who was hired by the University of Idaho (UI") as a tenure track associate law professor in June of 2011.  Plaintiff alleges that, despite being granted tenure and being promoted to full professor, she has been subject to discrimination, harassment and retaliation in violation of various provisions of federal law.  Several claims relating to those allegations are set for an upcoming trial beginning on October 11, 2022, and several motions are presently before the court.  This includes a motion filed by Plaintiff that argues that defendants "destroyed evidence"—specifically, interview notes from the first Culture and Climate review conducted at the College of law in 2018—that she believes could have been relevant to her hostile environment claims and therefore requests an adverse inference instruction or other sanction.  (*See* Dkt. 149.)  Plaintiff's motion is without merit and should be denied for reasons set forth below.

## II.

## FACTUAL BACKGROUND

It is undisputed that UI's Human Resources Department conducted a culture and climate review at the College of Law in 2018.  The process was intended to be confidential, (Dkt. 40-3, p.1.00005), and thirty-two College of Law faculty and staff members were interviewed during that process. (Declaration of Brandilyn Terwilliger, 9/22/2022, at ¶4.)  The substance of the comments those witnesses provided was compiled in a final report issued on April 17, 2018. (*Id.*; Dkt. 40-3, p. 1.00005.)

Notes concerning those interviews were destroyed within a week of the finalization and distribution of the final report.  (Terwilliger Decl., at ¶ 6-7.)  This was done in accordance with

University of Idaho Human Resources' standard operating procedures, a procedure that has been followed during other Culture and Climate reviews conducted by that department. (Terwilliger Decl., at ¶7.)

On June 26, 2018, more than two months after the final report had been issued, Plaintiff filed a complaint with the EEOC, wherein she alleged disparate treatment and hostile environment claims. That claim was ultimately dismissed and Plaintiff thereafter filed this lawsuit almost, a year later, on June 19, 2019. (*See* Dkt. 1.)

As the Court is aware, this action has been pending since then. Extensive discovery has been conducted, with more than 70,000 pages of documents produced and dozens of depositions conducted. This included discovery concerning the 2018 Culture and Climate report. (Declaration of Tully P. FitzMaurice, 9/21/2022, at ¶ 4.)

After Defendants produced the materials in their possession that were responsive to this request, on September 4, 2020, Plaintiff's counsel stated that she had anticipated receiving the notes or other raw data used to compile the report. (FitzMaurice Decl., Exh. A.) By letter dated November 16, 2020, Plaintiff's counsel was informed that those materials had been destroyed after the report had been finalized, before this lawsuit had been filed. (FitzMaurice Decl., 9/21/2022, Exh. B.)

Under the most recent scheduling order issued by the Court, factual discovery in this matter closed on November 13, 2020.[1] Nonetheless, the parties have been preparing for trial pursuant to the pretrial schedule set by the Court, which among other things, set September 13, 2022 as the deadline to file motions in limine, trial briefs and other proposals regarding jury or other trial related matters. As the Court is aware, this deadline produced a flurry of filings by

---

[1] This deadline was partly extended to allow additional discovery related to issues addressed by the Court's ruling on Plaintiff's motion to compel.

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS (DKT 149) -3-

both sides, including the motion for sanctions discussed here. As explained below, Plaintiff's motion for sanctions should be denied on both procedural and substantive grounds.

### III.

### LEGAL STANDARD

"A party seeking sanctions for spoliation thus bears the burden of establishing that the opposing party (1) destroyed relevant evidence and (2) had an obligation to preserve the evidence when it was destroyed or altered."  *Sherwood v. BNSF Railways*, No. 2:16-cv-00008-BLW, 2019 WL 1004563, *3 (D. Idaho March 1, 2019) (citing *Ryan v. Editions Ltd. W., Inc*., 786 F.3d 754, 766 (9th Cir. 2015)).  "An obligation to preserve attaches when a party knows or should reasonably know that the evidence is potentially relevant to litigation."  *Id*. (citing *United States v. Kitsap Physicians Serv*., 314 F.3d 995, 1001 (9th Cir. 2002)).  A ruling on a motion for sanctions based on alleged spoliation of evidence is committed to this court's sound discretion.  *Ryan*, 786 F.3d at 766.

### IV.

### ARGUMENT

**A.  Plaintiff's Motion was Not Timely and Should be Denied.**

As this Court has noted in the recent past, "[s]poliation is a discovery offense, so issues surrounding alleged spoliation should be resolved during discovery — not on the eve of trial." *Sherwood*, 2019 WL 1004563, at *2 (citing *Goodman v. Praxair Servs*., 632 F. Supp. 2d 494 (D. Md. 2009) (spoliation motions "should be filed as soon as reasonably possible after discovery of the facts that underline the motion")).

As noted above, the destruction of any interview notes related to the 2018 Culture and Climate report is not a recent development in this litigation.  Those materials were among the

first things that Plaintiff asked for when this suit was filed.  And when Plaintiff asked why none had been produced, Plaintiff was informed in writing almost <u>two years ago</u> that the materials she was requesting no longer existed and had been destroyed months before any claim had been filed, and more than a year before this lawsuit was commenced.  (FitzMaurice Decl., 9/21/2022, Exh. B.)  If Plaintiff intended to raise the issue of spoliation, she could have done so at any point over the past two years while discovery in this matter remained ongoing and numerous motions filed by both the parties were being litigated.  However, Plaintiff did not do so, and instead sat on this information, let discovery come to a close, and sprang into action mere weeks before trial.

For reasons succinctly articulated by this Court, saving this issue for the eve of trial is not procedurally appropriate.  *See Sherwood*, 2019 WL 1004563, at *2.  This was clearly and quite obviously a tactical decision, one intended to leave opposing counsel with only the briefest window to respond, and the Court few options if a violation were found.  Again, spoliation is a discovery offense and if this issue had been raised in a timely manner, additional discovery specific to this issue could have been ordered by the Court without disrupting the agreed upon course of litigation or trial.  That simply is not possible where, as here, the motion is brought mere weeks before trial, when targeted additional discovery is not an option.

Plaintiff should not be rewarded for her "disruptive" decision to "wait[] in the wings with planned spoliation" arguments that she has indisputably known about for years, and spring that issue on the Court and opposing counsel on the eve of trial.  *Sherwood*, 2019 WL 1004563, at *2. The Court can and should deny this motion on this basis.

### B.  No Spoliation Occurred.

Assuming for the sake of argument that this eleventh hour motion is timely, it should be denied for substantive reasons as well.  Defendants accept, for the sake of argument, that

Plaintiff believes that these notes would potentially have been relevant to her hostile environment claims.[2]  Defendants do not dispute that the 2018 Culture and Climate report includes a handful of race and gender sensitivity related comments.  Plaintiff apparently believes that a review of the interview notes (or more specifically, those of Jennifer Cossel, a former UI HR employee who conducted many of the interviews during the process) would demonstrate all manner of race or gender related horrors at the College were discussed by interviewees, regardless of what the final report may say.  Plaintiff is mistaken.  Ms. Terwilliger, the director of HR who participated in and oversaw the entire process, has testified that this was not the case, that she reviewed all of the interview notes the process generated, and that the final report (which she co-authored) was a fair and accurate summation of the comments received during the process overall.  (Terwilliger Decl., at ¶5.)  There is no evidence to support Plaintiff's belief that race or gender related comments were buried when the final report was issued because it is simply not accurate.

Plaintiff makes much of the fact that the interview notes were quickly destroyed after the final report was delivered and would like this Court to believe it was for some nefarious purpose. The evidence does not bear this out. The notes were destroyed after the report was finalized because that was (and is) the practice followed by UI's HR department when conducting confidential, departmental climate reviews.  (Terwilliger Decl., at ¶7.)  No lawsuit or claim was pending when the report was finalized and Ms. Terwilliger has testified that she did not, for any reason, expect that a lawsuit (or an EEOC claim) would be filed by Plaintiff months later.  (*Id.*)

---

[2]  It is difficult to imagine how these materials could have any possible relevancy to Plaintiff's other claims.  Plaintiff, after all, alleges that she has been denied a lengthy list of employment benefits due to her race or gender, or as retaliation for race or gender related protected activities. But the Climate Review was just that, an attempt to confidentially obtain honest feedback from faculty and staff concerning the overall climate of the College, "rather than a focus on one particular situation or person."  (Dkt 40-3, p. 1.00005.)

However hasty the destruction of interview notes following a culture and climate review may seem with the benefit of hindsight, the purposes of this policy are actually relatively straightforward.  Culture and climate reviews are not intended to identify or punish violations of law.  They are an attempt to confidentially obtain honest feedback from faculty and staff concerning the overall climate of the department being assessed.  (*Se* Dkt. 40-3, p. 1.00005).  This particular review was no different; participants were promised confidentiality in exchange for honest responses.  (*Id.*)  The interview notes were destroyed (as they are whenever a culture and climate review is completed and litigation is not pending), to ensure that this promise could actually be kept.

Plaintiff also argues that a spoliation finding should be made here because UI had a duty to retain the records for at least 3-years under a record retention schedule issued by an Idaho State Board of Education regulation, or by a University wide administrative rule concerning the retention of information records.[3]  (*See* Dkts. 149-7, 149-8.)  Plaintiff completely misconstrues both of these provisions and neither apply to the notes in question. As for the Board of Education regulation, contrary to what Plaintiff suggests, it does not impose a three year retention requirement on anything that arguably constitutes "institutional research" or somehow relates to "agency performance."  In her briefing, Plaintiff omitted the heading of that provision being cited which states that this provision addresses "CUSTOMER SURVEYS."  (Dkt. 149-8.)  And the language of the provision itself, in full, states that this requirement applies to "Institutional

---

[3] Defendants do not dispute that violations of "records-retention law[s] may constitute a breach of duty sufficient to impose a spoliation sanction."  *Harmon v. United States*, No. 4:15-cv-00173-BLW, 2017 WL 1115158, *3 (D. Idaho March 24, 2017) (noting that violation of a "records-retention law may constitute a breach of duty sufficient to impose a spoliation sanction").  However, Plaintiff does not argue that this duty was imposed by statute, either state or federal.  Nor are Defendants aware of any such authorities that could possibly have applied, and required them to retain the materials at issue here, i.e. ostensibly confidential interview notes from a department wide culture and climate review.

Research.  Surveys returned by clients, etc. regarding agency performance." (Dkt. 149-8.)  The notes at issue here relate to a confidential climate review conducted by Human Resources personnel, not surveys returned to the agency by customers or clients.  This provision simply does not apply to these records and thus is why UI did not believe that this requirement had any possible application to the records at issue here.  (Terwilliger Decl., at ¶7-9.)

And as far as the administrative policy relied on by Plaintiff, Plaintiff's claim that it imposes a 3-year retention requirement on all informal "notes" or "Unit/Administrative Records" is also not accurate.  What that provision actually states is "Informal/routine – meeting notes, availability of a resource, when co-worker will be back, general announcements – Temporary. Destroy 3 years after close of fiscal year of creation." (Dkt. 149-7.)  Nowhere in this provision is it stated that it applies to notes made in the context at issue here, i.e. an ostensibly confidential, department wide investigation.

And it must be mentioned that neither the University's HR Department nor UI's General Counsel's office have ever believed that either of these provisions apply to the records at issue here.  (Terwilliger Decl., at ¶7-9.)  A provision that primarily governs customer or client surveys or a provision governing informal notes of routine departmental events have no obvious (or even plausible) application to notes taken during a confidential investigation.  There is no basis whatsoever here to conclude that either of the provisions cited here by Plaintiff in any way applied to these records or required what Plaintiff suggests.

Finally, Plaintiff argues at some length that the nature of these records and the surrounding circumstances (and most significantly the facts that Plaintiff filed an EEOC charge a couple months after the review was completed), would have made it obvious to a reasonable person that these records were relevant to anticipated litigation, or indeed that a lawsuit centered

around these materials might be in the "offing," *Sherwood*, 2019 WL 1004563, at *2, in April of 2018.

This is revisionist history.  Plaintiff may well have been planning to file suit before the ink was dry on the climate review.  If so, this is unfortunate but it is also not in any way obvious how Defendants could have read Plaintiff's mind, or why this (apparently) inevitable outcome should reasonably have been foreseen by the Defendants.  By the time the climate review report was finalized and the interview notes destroyed, Plaintiff's career at the College had been an almost unqualified success.  She had been granted tenure in 2016 and was promoted to full professor in early 2018.  She did not receive everything she asked for since joining the College in 2011, but few employees at any workplace ever do.

In short, no violation of any duty to retain these records has been shown.  The records were destroyed well before a claim had even been filed, for good reason, and in accordance with longstanding University policies and practices.  Plaintiff's motion must therefore be denied for this reason as well.  *Kitsap Physicians Serv.*, 314 F.3d at 1001.

### C.  There is No Evidence of Bad Faith or Specific Intent.

Finally, as this Court has noted in passing in another relatively recent ruling: "With the 2015 Amendments, [FRCP 37] requires a finding by the court that a party acted with the intent to deprive another party of the use of electronically stored information (ESI) in litigation before an adverse inference instruction — permissive or mandatory — may be given to the jury. Fed .R. Civ. P. 37(e)(2)(B). While Rule 37(e) only addresses ESI, <u>I can think of no reason why the same principle should not govern the resolution under common law of a claim that physical evidence was spoliated</u>." *Sherwood v. BNSF Railways*, No. 2:16-cv-00008-BLW, 2019 WL 1413747, *1 (D. Idaho March 28, 2019).  Neither can Defendants.

Nor indeed can Defendants see any way that a finding of bad faith or specific intent to deprive Plaintiff of the use of these materials in future litigation could possibly be available in these circumstances.  Plaintiff makes much of the fact that her EEOC claim was filed mere months after these records were destroyed but her argument concedes the obvious; no claim was actually pending when the decision to destroy these notes was made.  And as noted previously, the notes were destroyed in accordance with existing University policy by an official who did not in any way expect or anticipate that they would be in any way relevant to future litigation, whether brought by Plaintiff or anyone else.  (Terwilliger Decl., at ¶7, 10-12).  To the extent that bad faith or specific intent to deprive Plaintiff of their use in litigation is required to find spoliation—and Defendants agree with the Court that it makes little sense to require such a showing for one form of evidence but not another, *see Sherwood*, 2019 WL 1413747, at*1—these facts simply do not support such a finding.

The Court does not need to reach the merits of this issue to deny Plaintiff's motion.  It can and should deny the motion because it is untimely as set forth above.  Should the Court decide to address the merits of Plaintiff's motion, it should also deny the motion because Plaintiff has failed to establish that Defendants destroyed relevant "evidence" for which they had an obligation to preserve when it was destroyed.

## V.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for sanctions should be denied.

DATED this 22nd day of September 2022.

CLEMENTS, BROWN & McNICHOLS, P.A.


By:   /s/     *Bentley G. Stromberg*
BENTLEY G. STROMBERG
Attorneys for Defendants University of Idaho,
Mark Adams, Jerrold Long and Johanna Kalb


<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 22nd day of September, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Erika Birch
T. Guy Hallam, Jr.
Strindberg Scholnick Birch
Hallam Harstad Thorne
1516 W. Hays Street
Boise, Idaho 83702
erika@idahojobjustice.com
guy@idahojobjustice.com


      /s/
Bentley G. Stromberg