Erika Birch (ID Bar No. 7831)
T. Guy Hallam (ID Bar No. 6101)
**STRINDBERG SCHOLNICK BIRCH HALLAM HARSTAD THORNE**
1516 West Hays Street
Boise, ID 83702
Telephone: (208) 336-1788
Facsimile: (208) 287-3708
Erika@idahojobjustice.com
Guy@idahojobjustice.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **SHAAKIRRAH R. SANDERS,**<br><br>    Plaintiff,<br><br>vs.<br><br>**THE UNIVERSITY OF IDAHO, a public university governed by the BOARD OF REGENTS OF THE UNIVERSITY OF IDAHO aka the STATE BOARD OF EDUCATION, an executive department of the STATE OF IDAHO, et al.,**<br><br>    Defendants. | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>Case No.: 3:19-cv-00225-BLW<br><br>Judge Winmill |

Plaintiff Shaakirrah R. Sanders ("Professor Sanders"), by and through her undersigned attorneys, hereby submits this *Reply Memorandum in Support of Plaintiff's Motion for Sanctions for Spoliation of Evidence*.

## ARGUMENT

Professor Sanders seeks a negative inference jury instruction based upon Defendants' spoliation of Ms. Cossel's interview notes, which she took as part of the law school's April 2018 Climate and Culture Review ("C&C Review"). To demonstrate spoliation, Professor Sanders must

show that (1) Defendants had an obligation to preserve the notes at the time they were destroyed; (2) the evidence was relevant to Professor Sanders' claim such that a reasonable trier of fact could find that it would support that claim; and (3) the notes were destroyed with a culpable state of mind. *See State Farm Fire & Cas. Co. v. General Motors, LLC*, 542 F. Supp. 3d 1124, 1128 (D. Idaho 2021). Here, Defendants claim that: (1) They didn't have an obligation to preserve Ms. Cossel's notes at the time they were destroyed; (2) Ms. Cossel's notes were irrelevant to Professor Sanders' claims; and (3) Defendants did not have a culpable state of mind. Furthermore, Defendants contend that Professor Sanders' Motion for a spoliation-based adverse inference instruction was untimely. For the reasons set forth below, Defendants' positions are specious.

I. **Defendants had an Obligation to Preserve Ms. Cossel's Notes at the time they were Destroyed.**

To show spoliation, Professor Sanders must show that Defendants had an obligation to preserve Ms. Cossel's notes at the time they were destroyed. As set forth in Professor Sanders' Spoliation Motion for Sanctions, Defendants had at least two retention policies that required them to maintain these records for three years. *See Doc. #149-1, at 6-8*. Furthermore, "[t]he University of Idaho retention schedule is based on the Higher Education Retention Schedule adopted by the State Board of Education,"[1] and that Retention Schedule states that all personnel records (such as complaints, EEO reports and supporting documentation, and employee affidavits) must be kept for a minimum of at least one year. *See State of Board of Education – Higher Education Records Retention Schedule, attached hereto as Exhibit A.* [2] Yet, Defendants claim that the immediate destruction of Ms. Cossel's notes was appropriate and "in accordance with Human Resources'

---

[1] *See Doc. #149-7, University Administrative Procedures Manual 65.02 (Records Inventory, Retention and Disposition), at ¶C-1.*
[2] For example, even unsolicited resumes must be maintained for a period of one year. *See State of Board of Education – Higher Education Records Retention Schedule, at p. A-9-176.*

**2 |** REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

standard operating procedures that have been utilized in other climate and culture reviews and that had been previously approved of by the University of Idaho's general counsels' office." *Terwilliger Dec., Doc. #164-2, at ¶7.* However, Defendants did not provide a copy of that "standard operating procedure," and they have provided no evidence that this supposed SOP complies with the University's and State Board of Education's retention guidelines. In other words, Defendants are asking the Court to rely on unsubstantiated evidence of an unwritten SOP that supposedly allows the University to destroy evidence a few weeks after it is created, over a formal retention policy that requires the University to maintain personnel records for at least one year. Defendants' position is untenable and should be rejected.

Even *assuming arguendo* that the University's retention policies do not apply, Defendants had an obligation to retain Ms. Cossel's notes because they knew or should have known that the notes would be relevant to anticipated litigation.[3] Indeed, during the April 2018 C&C interview, Professor Sanders told Ms. Cossel that Dean Adams had discriminated against her based on her race and gender,[4] and Defendants' own report admitted that the type of discrimination and harassment that came to light during the C&C Review was so significant that it possibly "r[o]se to the level of" illegal discrimination and retaliation (such that referral to OCRI was warranted).[5] The University's general counsel is involved in the resolution of OCRI complaints, and in fact, Defendants have included communications from April 2018 (when the C&C Review was issued and Ms. Cossel's notes were destroyed) in their privilege log. *See Privilege Log, attached hereto*

---

[3] *See Bown v. Reinke*, No. 1:12-CV-00262-BLW, 2016 WL 107926, at *5 (D. Idaho Jan. 8, 2016) (duty to preserve arises "not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation").

[4] *See Plaintiff's EEOC Charge, Doc. #149-4* ("During my interview in March of 2018, I expressed my concerns about Mark Adam's hostility towards me and the basis of my belief for that hostility (i.e., discrimination and retaliation after inquiries about adverse employment decisions with disparate impacts on me (and others) based on race and gender.").

[5] *See April 2018 C&C Review, Doc. #149-2, at 1.*

**3 |** REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

*as Exhibit B.* There would not be any "privileged" communications relevant to this case from April 2018, if Defendants did not believe at that time that litigation was anticipated. In short, regardless of the University's retention policies, Defendants had an obligation to preserve Ms. Cossel's interview notes because they knew or should have known that the notes would be relevant to anticipated litigation.

II.     **Ms. Cossel's Notes were Relevant to Professor Sanders' Claims.**

Defendants further contend that Ms. Cossel's notes were irrelevant to Professor Sanders' claims because the final C&C Review "was a fair and accurate summation of the comments received during the process overall." *Def. Opposition to Pl. Motion for Sanctions, Doc. 164 ("Def. Opp.") at 4*. However, because the comments in the 2018 C&C Review are anonymous, Professor Sanders is unable to use them to bolster her discrimination claims in the same way she would be able to use the notes. For example, Professor Sanders could show discriminatory animus if she knew that most of the positive comments about Dean Adams in the C&C Review came from White male faculty, while the majority of the negative comments came from employees of color.[6] But this line of evidence is not available to her due to Defendants' spoliation, and Defendants even use this anonymity as reason for excluding evidence of these other complaints. *See Def. Memo in Support of MiLs, Doc. #142-1, at 7* (arguing that other faculty members' complaints of discrimination are inadmissible because they are "anonymous and unverifiable"). In short, Ms. Cossel's notes are relevant to Professor Sanders' discrimination and retaliation claims, and the University's failure to preserve them constitute spoliation.

---

[6] As set forth in her *Opposition to Defendants' Motions in Limine*, these discrimination complaints by other faculty members are probative of Defendants' discriminatory animus. *See Pl. Opp. to Def. Motions in Limine, Doc. #163, at 6-9.*

4 | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

### III. Ms. Cossel's Notes were Destroyed with a Culpable State of Mind.

It is black letter law that "[s]anctions for spoliation may be imposed upon 'simple notice of potential relevance to the litigation,' and a finding of bad faith is not required." *State Farm Fire & Cas. Co. v. General Motors, LLC*, 542 F. Supp. 3d 1124, 1130 (D. Idaho 2021). Despite this, Defendants contend that spoliation sanctions are appropriate only when "a party acted with the intent to deprive another party of the use of [evidence] in litigation." *Def. Opp. at 9, quoting Sherwood v. BNSF Railways*, No. 2:16-cv-00008-BLW, 2019 WL 1413747, *1 (D. Idaho March 28, 2019). However, the case cited by Defendants (*Sherwood*) does not stand for the proposition that Defendants suggest. Indeed, in *Sherwood*, this Court simply noted that the Ninth Circuit may "revisit" the issue of whether "bad faith" is required in spoliation cases and held that "bad faith" was not present in that case. *Id*. However, the Ninth Circuit has *not* revisited the issue, and the long-standing holding – that "bad faith" is not required to show spoliation – remains undisturbed. *See*, e.g., *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *State Farm Fire & Cas. Co.*, 542 F. Supp. 3d at 1130. Here, as set forth above, Defendants had notice that Ms. Cossel's interview notes would likely be relevant to anticipated litigation, yet they shredded these notes in contravention of the University's own retention policies. This is more than sufficient to find that Defendants acted with a culpable state of mind.

### IV. Professor Sanders' Motion for Sanctions was Timely.

Finally, Defendants contend that Professor Sanders' Motion for Sanctions was untimely, claiming that "[s]poliation is a discovery offense, so issues surrounding alleged spoliation should be resolved during discovery — not on the eve of trial." *Def. Opp. at 6.* In other words, Defendants imply that any Motion for Sanctions based on spoliation of evidence must be raised during discovery, and not as part of *Motions in Limine* prior to trial.

Defendants overstate the law – there is nothing in Ninth Circuit or District of Idaho caselaw that requires a party to seek an adverse inference jury instruction (based on spoliation of evidence or otherwise) during discovery. Indeed, it is axiomatic that the issue of jury instructions will not arise during discovery, and several District of Idaho courts have addressed spoliation-based adverse inference jury instructions as part of *Motions in Limine* immediately before trial.[7] In fact, after doing an extensive search in both the Ninth Circuit and the District of Idaho, Professor Sanders' counsel could find one case that even discussed the timeliness of a request for spoliation-based adverse inference instructions, and that is the one case cited by Defendants – S*herwood v. BNSF Railways*, No. 2:16-cv-00008-BLW, 2019 WL 1004563 (D. Idaho March 1, 2019). However, that case is inapposite because the plaintiff sought to introduce spoliation evidence and call an "evidence-preservation expert" at trial, even after he had ignored the Court's prior order to file a spoliation-based Motion for Sanctions during discovery. *Id*. at *2. The Court noted that this presentation of evidence at trial would be "disruptive, particularly when the Court had previously instructed plaintiff to raise spoliation in a discovery motion," but it did not base its decision on this "timeliness" issue. Instead, the Court examined the merits of the plaintiff's spoliation issue and determined "the Court is not persuaded that [the defendant] spoliated evidence." *Id*. at *3.

Defendants also contend that Professor Sanders' decision to ask for an adverse inference instruction as part of *Motions in Limine* was "a tactical decision," stating that she has known about the destruction of Ms. Cossel's notes since Fall of 2020, and "[i]f Plaintiff intended to raise the issue of spoliation, she could have done so at any point over the past two years while discovery in this matter remained ongoing and numerous motions filed by both the parties were being litigated."

---

[7] *See, e.g.*, *Rush v. Weinstein*, No. 1:18-CV-00073-REP, 2022 WL 1127898, at *6-*9 (D. Idaho Apr. 15, 2022); *Hathaway v. Idaho Pac. Corp.*, No. 4:15-CV-00086-DCN, 2019 WL 5386464, at *12 (D. Idaho Oct. 21, 2019); *Miller v. Lemhi Cnty.*, No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *7 (D. Idaho Mar. 2, 2018).

**6** | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

*Def. Opp. at 5*. However, Plaintiff's request for these notes was served in December of 2019 and Defendants' first substantive response was served in early February of 2020. Yet, Defendants did not inform Plaintiff that they had shredded Ms. Cossel's notes back in 2018 until a phone call in September of 2020 at the earliest, and which was not confirmed by Defendants in writing until three days after the close of discovery (on November 16th). As such, there is no way that Professor Sanders could have filed a spoliation Motion for Sanctions during discovery. Furthermore, since that time, Defendants have filed two motions for summary judgment (one in December 2020 and another in December 2021), and the Court did not fully rule on those Motions until July 2022. *See Def. Mot. for SJ, Doc. #40; Def. Mot. for Partial SJ, Doc. #104; Order, Doc. #133, respectively.* Professor Sanders did not raise the issue of the adverse inference jury instruction during that two-year period when Defendant was filing summary judgment because it seemed premature to do so (since the remedy she seeks is an adverse jury instruction).

In sum, there is nothing in Idaho or Ninth Circuit law that mandates that a party's request for a spoliation-based adverse inference instruction must be raised during discovery, and not as part of *Motions in Limine* prior to trial. Furthermore, there is no evidence to suggest that Professor Sanders' decision to request an adverse inference instruction now (as opposed to earlier) was a tactical decision meant to trick Defendants. As such, and for the reasons set forth above, Professor Sanders' request for an adverse inference instruction should be granted.[8]

---

[8] Defendants also contend that "if this issue had been raised in a timely manner, additional discovery specific to this issue could have been ordered by the Court without disrupting the agreed upon course of litigation or trial." *Def. Opp. at 5*. However, there is no additional discovery that could have been done here to remedy or minimize the loss of evidence or cure the prejudice to Plaintiff. Indeed, Ms. Cossel is the only one who knew what was in her notes, and she does not remember who said what during her 2018 Climate & Culture interviews. *See Dkt. # 166-3, Cossel Dep. 57:1-19, 59:10-60:1, 61:7-62:25* ("Q: Apart from this document [the 2018 Climate & Culture Review], are there any other materials that would help you refresh your recollection of these conversations? A: Maybe my notes from that time if they still exist.")

7 | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

**CONCLUSION**

Based on the foregoing, and for the reasons set forth in Plaintiff's Motion *for Sanctions for Spoliation of Evidence,* Plaintiff respectfully requests that the Court issue an adverse inference instruction, stating that if produced, Ms. Cossel's interview notes would have been adverse to Defendants and favorable to Professor Sanders' claims.

Dated this 29th day of September, 2022

Respectfully submitted,

**STRINDBERG SCHOLNICK BIRCH HALLAM HARSTAD THORNE**

/s/ Erika Birch
Erika Birch
T. Guy Hallam

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2022 a true and correct copy of the foregoing pleading was served on the following via electronic filing system:

Bentley G. Stromberg
Tully Fitzmaurice
Sonyalee Nutsch
CLEMENTS, BROWN & McNICHOLS, P.A.
321 13th Street
Post Office Box 1510
Lewiston, Idaho 83501
*bstromberg@clbrmc.com*
*tfitzmaurice@clbrmc.com*
*snutsch@clbrmc.com*

    /s/ Dunja Subasic
Dunja Subasic