UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAAKIRRAH R SANDERS,<br><br>     Plaintiff,<br><br>     v.<br><br>THE UNIVERSITY OF IDAHO,<br>COLLEGE OF LAW, et al.,<br><br>     Defendants. | Case No. 3:19-cv-00225-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion in Limine (Dkt. 142) and the remaining issues raised in Plaintiff's Motion in Limine (Dkt. 148).[1] For the reasons discussed below, the Court will grant in part and deny in part the motions.

## LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v.*

---

[1] The Court previously addressed the other issues raised in Plaintiff's Motion in Limine in a Memorandum Decision and Order entered on September 28, 2022. (Dkt. 167.)

*Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). A motion in limine should not, however, be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, unless the proffered evidence is clearly inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.

Further, rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce v. United States*, 469 U.S. 38, 41 (1984) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## ANALYSIS

### A. OCRI Chart of Complaints (Plaintiff's Exhibit 1095); Evidence of Complaints and/or Incidents involving Students and Other Faculty; and Professor McFarlane

Defendants seek to exclude Plaintiff's Exhibit 1095, which is an OCRI chart of complaints. Defendants contend this exhibit must be excluded because (1) it is hearsay, (2) it is not relevant, and (3) any probative value is substantially

outweighed by risk of unfair prejudice and confusion and delay under Federal Rule of Evidence 403. Defendants also generally seek to exclude evidence of other incidents and/or complaints of discrimination and retaliation made by law students and/or other faculty on the ground that those incidents/complaints are not relevant and, even if relevant, should be excluded under Rule 403. Finally, Defendants seek to exclude Professor McFarlane's testimony and emails she sent or received while employed by UI.

**1. The Court has insufficient information to determine whether Ex. 1095, a 2021 version of the OCRI Chart, is hearsay but finds that the *2019 v*ersion of the OCRI Chart is not hearsay.**

Under Federal Rule of Evidence 801, an opposing party's statement is not hearsay if:

> The statement is offered against the opposing party and:
> (A) was made by the party in an individual or representative capacity;
> (B) is one the party manifested that it adopted or believed to be true;
> (C) was made by a person whom the party authorized to make a statement on the subject;
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> (E) was made by the party's coconspirator during and in the furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2).

Exhibit 1095 is a chart prepared by OCRI Director Erin Agidius that provides a summary of all discrimination and retaliation complaints that OCRI received between 2011 and December 2021, the OCRI's findings as to each

complaint, and what actions (if any) were taken by OCRI in response to the complaint. Apparently Agidius also prepared a 2019 version of the Chart as part of providing her Rule 30(b)(6) deposition testimony in November 2019. She used the 2019 version of the Chart during that deposition in lieu of providing full testimony regarding the factual circumstances surrounding any and all reports of discrimination, harassment, and retaliation made at the law school from June 2011 to the date of the 2019 deposition. Further, the parties agreed Agidius's testimony during the 30(b)(6) deposition would be treated as sworn testimony on behalf of Defendant UI.

The Court finds that the 2019 version of the Chart, prepared by and used by Agidius in her 30(b)(6) testimony, is not hearsay because it is being offered against UI and (1) was made by Agidius in her representative capacity for UI; (2) was made by Agidius, who was authorized by UI to make a statement on the subject; and (3) was made by UI's employee on a matter within the scope of that relationship and while it existed. *See* Fed. R. Evid. 801(d)(2)(A), (C), (D).

As to the version of the Chart that Plaintiff has designated as Exhibit 1095, that includes OCRI complaints through December 2021, the Court has insufficient information to determine whether it is also nonhearsay under Rule 801, or falls within an exception to the hearsay rule. Thus, the Court will defer ruling on

whether Exhibit 1095, which is the 2021 version of the Chart, should be excluded as hearsay. Defendants can raise their objection at trial, at which time the Court will issue its ruling.

### 2. The Chart and evidence of other incidents and/or complaints of discrimination are relevant, including the testimony and exhibits of Professor McFarlane.

Defendants argue that the Chart, and other incidents and/or complaints of discrimination, including the testimony of McFarlane and her emails, are irrelevant and must therefore be excluded because they show complaints of discrimination and retaliation by students or other faculty that are not similarly situated to Plaintiff; and because, if the evidence is admitted, Defendants must be provided an opportunity to rebut the evidence by showing how the complaints were investigated and the results of those investigations.[2]

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Further, although evidence of other wrongful acts is inadmissible to show that a party acted in conformity therewith,

_____

[2] Defendants also argue that the complaints in the Chart should be excluded because they were not ignored and do not show a "smoking gun." The Court declines this apparent invitation to weigh the evidence or resolve factual disputes. *See C&E Servs., Inc., v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (motion in limine should not be used to resolve factual disputes or weigh evidence).

such evidence is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

### a. Discrimination and Retaliation Claims

To prove her discrimination and retaliation claims, Plaintiff is required to demonstrate that she was discriminated against because of her gender and/or race, and that she was retaliated against because of her participation in protected activity.

As the Supreme Court has recognized, "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). Thus, "evidence of the employer's discriminatory attitude *in general* is relevant and admissible to prove race," gender, or other forms of unlawful discrimination. *Heyne v. Caruso*, 69 F.3d 1475, 1479-80 (9th Cir. 1995); *see Aikens*, 460 U.S. at 713 n.2 (evidence of an employer's comments admissible to prove race discrimination); *Zetwick v. County of Yolo*, 850 F.3d 436, 445 (9th Cir. 2017 ("We have long recognized that "[t]he sexual harassment of others, if shown to have occurred, is relevant and probative of [a defendant's] general attitude of disrespect toward his female employees, and his sexual objectification of them." (citations omitted)); *Metoyer v. Chassman*, 504 F.3d 919, 937 (9th Cir. 2007) ("We have held that bigoted remarks by a member of senior management may tend to show discrimination, even if directed at someone

other than the plaintiff." (citation omitted)), *abrogated on other grounds by National Assoc. of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617 (9th Cir. 2019); *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir. 1997) (a supervisor's alleged racist remarks, if they were indeed made, "could be proof of discrimination against [the plaintiff] despite their reference to another agent and their utterance after the hiring decision"); *see also Becker v. ARCO Chem. Co.*, 207 F.3d 176, 194 n.8 (3d Cir. 2000) ("as a general rule, evidence of a defendant's prior discriminatory treatment of . . . other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination").

The Court finds that evidence of complaints and/or incidents of discrimination, bias, and retaliation involving both law students and faculty other than Plaintiff, and Defendants' reactions to those complaints and/or incidents, is admissible to show whether Defendants have general discriminatory animus. General discriminatory animus is, in turn, relevant and probative on the issue of whether Plaintiff was subjected to discrimination and retaliation on account of her gender and/or race.

### b. Hostile Work Environment Claim

To prove her hostile work environment claim, Plaintiff must demonstrate

that she was subjected to a work environment that was both subjectively and objectively hostile, i.e., "permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.' " *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993).

If "hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005) (evidence that other women were harassed showed  hostility pervaded the workplace and helped to show the workplace was hostile). Further, an employer's reaction to abusive and discriminatory behavior may itself create a hostile work environment, particularly if the plaintiff can show that the employer condoned or ratified the abusive conduct. *See Fuller*, 865 F.3d at 1166-67 ("[W]hen an employer acts in a way that "effectively condone[s]" or ratifies a rape or sexual assault and its effects, a jury may reasonably infer that the employer itself is discriminating 'because of sex.' " (citation omitted)).

The Court finds evidence of complaints and/or incidents of discrimination involving students and other faculty members, and Defendants' reaction thereto, is also relevant to Plaintiff's hostile work environment claim.

### c. Rule 404(b)

Finally, under Federal Rule of Evidence 404(b), evidence of other incidents and/or complaints of discrimination and retaliation, the environment at the law school, and Defendants' reaction thereto, is not admissible to show that Defendants acted in conformity therewith. However, such evidence may be admissible for another purpose, such as to prove Defendants' motive, intent, knowledge, or absence of mistake. Fed. R. Evid. 404(b).  For example, this evidence may be admissible to show that the work environment was objectively hostile, that Defendants knew it was, and that despite this knowledge, they failed to take remedial action.

In sum, the Court finds, as a general matter, that evidence of other incidents and/or complaints by law students and other faculty of discrimination, retaliation, and the environment at the law school, and Defendants' reaction thereto, are admissible and relevant to Plaintiff's claims of gender and/or racial discrimination, retaliation, and hostile work environment.

### d. Professor McFarlane

Turning specifically to Professor McFarlane, she apparently reported, and her emails discuss, both gender- and disability-related discrimination and retaliation. Defendants argue that her testimony and emails should therefore be excluded because Plaintiff is not claiming disability discrimination. Plaintiff does

not specifically address this nuance of McFarlane's proposed testimony and exhibits.

Evidence of disability-related discrimination and failure to accommodate does not appear to be relevant here and may therefore be subject to exclusion by the Court at trial. However, evidence of gender-related discrimination and retaliation, and retaliation in general, even if related to claims of disability discrimination, are relevant and admissible, as discussed above. Further, the Court recognizes that the evidence of gender- and disability-related discrimination and retaliation might be tightly interwoven and thus impossible to separate. Thus, although the Court will provisionally grant Defendants' motion to the extent it seeks to exclude McFarlane's testimony and exhibits related to her disability-related discrimination, the Court may reconsider this ruling if Plaintiff demonstrates that the McFarlane evidence of gender- and disability-related discrimination and retaliation are tightly interwoven and impossible to separate, or that the evidence of disability-related discrimination and retaliation is otherwise admissible.

### 3. The Chart and evidence of other incidents/complaints, including the evidence from McFarlane, are not excludable under Rule 403

Rule 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As this Court has often explained, Rule 403 is a rule of *inclusion*—evidence is excluded only if the probative value is "substantially outweighed" by the delineated risks. Thus, the Rule 403 analysis starts with the assumption of inclusion of the evidence then turns to whether the probative value of the evidence is substantially outweighed by any of the delineated risks.

Defendants argue that the Chart[3] and evidence of other incidents and/or complaints of discrimination and retaliation, including the McFarlane evidence, should be excluded under Rule 403 because the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusion of the issues and undue delay.

Defendants argue that the evidence involves incidents/complaints reported by individuals other than Plaintiff and will result in a series of "mini-trials" concerning the truth, relevancy, and outcome of each of the incidents/complaints involved and will thus result undue delay and confusion of the issues. The Court disagrees. Although it will take time if Defendants choose to delve into the

---

[3] Again, although the Court has ruled that the 2019 version of the Chart is not hearsay, the Court has not ruled on whether the 2021 version of the Chart is inadmissible hearsay.

veracity of the evidence of other incidents/complaints, the risk of any resulting delay does not substantially outweigh the probative value of the evidence. Further, the Court can address any risk of delay at trial, as the evidence unfolds.

The Court also does not find that the introduction of this evidence will cause confusion of the issues, let alone that such a risk substantially outweighs the probative value of the evidence. To the extent needed, Defendants can request that the Court give a limiting instruction during trial to reduce the risk of any confusion that may arise.

Finally, the Court does not find a risk of unfair prejudice,[4] let alone that the probative value of the evidence is substantially outweighed by any such risk. Again, Defendant can request that the Court give a limiting instruction during trial to reduce any risk of prejudice that may arise.

In sum, the Court finds that the probative value of evidence of other incidents and/or complaints of discrimination, bias, retaliation, and the environment at the law school (including the Chart and the McFarlane evidence), is not substantially outweighed by undue delay, confusion of the issues, unfair

---

[4] Unfair prejudice under Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Cmt. Notes.

prejudice, or any of the other delineated risks set out in Rule 403. To the extent

such a risk arises during trial as the evidence unfolds, Defendants can request a

limiting instruction to address that risk.

### B.   EEOC's Determination

Plaintiff seeks to exclude the EEOC's determination in response to

Plaintiff's 2018 EEOC complaint. Defendants, on the other hand, seek to introduce

the EEOC determination. For the reasons discussed below, the EEOC

determination will be excluded.

The Ninth Circuit has held that an EEOC determination of probable cause is

per se admissible. *See Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 505 (9th

Cir. 1981) ("the plaintiff has a right to introduce an EEOC probable cause

determination in a Title VII lawsuit, regardless of what other claims are asserted,

or whether the case is tried before a judge or jury). However, an EEOC

determination that insufficient facts exist to continue an investigation is not *per se*

admissible. *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999)

("We now hold that an agency's determination that insufficient facts exist to

continue an investigation is not per se admissible in the same manner as an

agency's determination of probable cause."). Instead, "when a district court is

asked to admit an agency's determination that insufficient facts exist to continue an

investigation," the court must weigh the prejudicial effect of the EEOC's

determination against its probative value under Rule 403. *Id.*

Here, Defendants seek to introduce, and Plaintiff seeks to exclude, not a probable cause determination but instead an EEOC dismissal form setting forth the EEOC's final determination that insufficient facts exist to continue an investigation. Specifically, the form states:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

(Dkt. 151 at 2.) Under *Beachy*, this determination is not *per se* admissible. Instead, to rule on whether the determination should be admitted, the Court must weigh the prejudicial effect of the EEOC's determination against its probative value under Rule 403. *See Beachy*, 191 F.3d at 1015.

 Here, the Court finds EEOC's determination to be of little probative value. The determination does not include any explanation of what information the EEOC obtained and considered during its investigation, or the basis for its determination. The determination is also ambivalent—the EEOC states that it is "unable to conclude that the information obtained establishes violations" but also states it "does not certify that [UI] is in compliance with the statutes." Further, the EEOC determination was made before much of the conduct at issue in this case occurred.

On the other hand, there is a substantial risk that the jury will give undue weight or deference to the EEOC's determination, creating a significant risk of undue prejudice. *See Beachy*, 191 F.3d at 1015 ("There is a much greater risk of unfair prejudice involved in introducing a final agency ruling as opposed to a probable cause determination, because a jury might find it difficult to evaluate independently evidence of discrimination after being informed of the investigating agency's final results.").

The Court finds that the probative value of the EEOC's determination, including the dismissal form, is substantially outweighed by the risk of unfair prejudice and that, accordingly, the determination is inadmissible under Rule 403.

Defendants also argue that Plaintiff is "almost certain to address the EEOC investigation at trial," since she alleges that she experienced retaliation because she filed the EEOC complaint. Defendants argue that if she does mention the EEOC investigation, they should be permitted to offer evidence demonstrating the nature of and outcome of that investigation. According to Defendants, unless they are allowed to introduce the EEOC determination to the jury in this circumstance, the jury will be left with "an incomplete, and ultimately misleading account of this investigation." (Dkt. 142-1 at 11-12.)

The timing and fact that Plaintiff filed the EEOC complaint alleging gender

and/or race discrimination and retaliation is relevant because it demonstrates that she engaged in protected activity, a necessary element of her retaliation claim. As Plaintiff points out, Defendants have already stipulated that she filed this complaint and the timing of when she did so. (*See* Dkt. 145 at 3, ¶ 7 (Defendants' Stipulation of Undisputed Facts stating: "On June 26, 2018, Professor Sanders filed a complaint with the Equal Employment Opportunities Commission (EEOC) alleging that UI had discriminated and/or retaliated against her due to her gender and/or race.").) Plaintiff represents that these stipulated facts are the limit of her intended evidence regarding the EEOC complaint.

 Plaintiff's representation that she does not intend to introduce evidence regarding the EEOC complaint beyond the facts to which Defendants have already stipulated, and thus does not intend to introduce evidence regarding the EEOC investigation itself, sufficiently addresses Defendants' concerns. Plaintiff's motion to exclude this evidence (beyond the evidence of the stipulation) is GRANTED and Defendants' motion is accordingly be denied.

### C.    **Guidepost and Schorr Investigations**

Defendants seek to introduce findings of two different investigations of Plaintiff that occurred while this litigation was pending—one investigation initiated in September 2020 that was conducted by Dan Schorr, and another investigation in 2021 that was conducted by Matthew Zandi with Guidepost

Solutions. Plaintiff agrees that these investigations are relevant to her claims of retaliation and a hostile work environment. She does, however, raise some issues as to the admissibility of the full written reports of the investigations.

### 1.  2020 Schorr Investigation

Plaintiff does not object to the admission of evidence of the Schorr investigation and investigation findings, but takes the position that the relevant evidence about this investigation can be admitted without admission of the actual investigation report, which is apparently 56 pages long. Plaintiff also points out that Defendants did not identify Schorr's findings as a trial exhibit and neither party has identified Schorr as a witness.

Plaintiff objects to the admission of the Schorr investigation report, explaining that it contains hearsay statements within it. She points out that, if the report is admitted, depending on which party is offering the report, and for what purpose, the Court may need to rule on hearsay objections regarding statements contained in the report. Finally, Plaintiff takes issue with some aspects of the investigation, and contends that the investigation was mishandled in a way that contributed to the hostile work environment.

The Court will provisionally grant Defendants' motion seeking a ruling that evidence of the Schorr investigation and investigation findings are admissible (with proper foundation, authentication, etc.). The Court also will direct the parties

to meet and confer to determine whether they can reach a stipulation regarding the admissibility of part or all of the Schorr investigation report. If they cannot reach agreement on a stipulation, the Court will, upon notice from the parties, issue a ruling on whether the Schorr report is admissible.

### 2.  2021 Guidepost Investigation

Plaintiff does not object to the admission of evidence regarding the Guidepost investigation and investigation findings, but does object to admission of the investigation report. Plaintiff contends that the report contains inaccuracies and misrepresentations and that if the report is admitted, an entire mini-trial will be required to point out the inaccuracies and falsehoods contained within the report.

Plaintiff also points out that although Defendants identified the Guidepost investigation report and the Guidepost investigation findings as an exhibit, Defendants did not timely disclose the investigator—Zandi—as a witness. The Court has, based on that failure to timely disclose, excluded Zandi from testifying. (Dkt. 167.)

Finally, Plaintiff takes the position that the relevant evidence about the Guidepost investigation and findings can be admitted without the admission of the actual investigation report, but that if the report is admitted, the Plaintiff's response to the report must also be admitted. Further, Plaintiff states that the report, including the findings, Plaintiff's response, and the rebuttal, is 240 pages long and

contains inadmissible hearsay statements that the Court will need to rule on if the report is admitted.

The Court will provisionally grant Defendants' motion seeking a ruling that evidence of the Guidepost investigation and findings are admissible (with proper foundation, authentication, etc.). The Court also will direct the parties to meet and confer to determine whether they can reach a stipulation regarding the admissibility of part or all of the Guidepost investigation report. If they cannot reach a stipulation, the Court will, upon notice from the parties, issue a ruling on whether the Guidepost report is admissible.

### D.    Statements by Jerrold Long and Mark Adams Before and After they were Dean

Defendants seek to exclude statements, including email communications, from Jerrold Long and Mark Adams that were made or sent either before or after they were in the position of Dean of the law school. They argue that these communications are not relevant and have no probative value.

As Plaintiff points out, Defendants do not point to any specific communications in support of their motion, and instead merely rely on the time frame of before and after Long and Adams were Dean. The Court cannot, without knowing what was stated in the communications, rule as to the relevance and probative value of the communications. Defendants' motion seeking a blanket

exclusion of these communications will be denied.

### E.     Disclosure of Experts

Plaintiff moves to exclude any expert testimony from defense witnesses Erin Agidius, Brandi Terwilliger, and Lindsay Ewan on the ground that Defendants did not disclose these witnesses (or any other witness) as expert witnesses under Federal Rule of Civil Procedure 26[5] and Federal Rule of Evidence 702.[6]

Defendants respond that they do not intend to offer expert testimony from these witnesses and that, instead, these witnesses will testify regarding matters about which they have personal knowledge and that their testimony is thus

---

[5]  Under Rule 26, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702 . . . ." Fed. R. Civ. P. 26(a)(2)(A).

[6] Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

permissible under Federal Rule of Evidence 701.[7]

The Court has insufficient information to determine whether the expected testimony of these witnesses falls within the parameters of Rule 701—opinion testimony by lay witnesses—as claimed by Defendants or whether, instead, their expected testimony falls within the parameters of Rule 702—testimony by expert witnesses. However, because Defendants deny that they intend to elicit expert testimony from these witnesses, the Court will grant Plaintiff's motion in limine seeking to exclude expert testimony from these witnesses, including any opinion testimony based on their scientific, technical, or other specialized knowledge.

## ORDER

IT IS ORDERED that Defendants' Motion in Limine (Dkt. 142) and the remaining issues raised in Plaintiff's Motion in Limine (Dkt. 148) are GRANTED

---

[7] Rule 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

in part and DENIED in part as follows:

1.    Defendants' motion to exclude Professor McFarlane's testimony and exhibits related to her disability-related discrimination is provisionally GRANTED subject to reconsideration at trial upon an appropriate showing by Plaintiff. Defendants' motion to exclude the OCRI Chart (Plaintiff's Exhibit 1095), Evidence of other incidents and/or complaints, and McFarlane evidence is otherwise denied.

2.    Plaintiff's motion to exclude evidence of the EEOC's determination, the dismissal form, and the EEOC investigation, beyond the stipulation entered into by Defendants, is GRANTED. Defendants' motion on this issue is DENIED.

3.    Defendants' motion for admission of evidence of the Schorr investigation and investigation findings, and of the Guidepost investigation and investigation findings is provisionally GRANTED in part. The parties are directed to meet and confer regarding reaching a stipulation on the admissibility of all or part of the Schorr report and the Guidepost report. If they are unable to reach a stipulation, the Court will, upon notice from the parties, issue a ruling on whether the reports are admissible.

4.    Defendants' motion seeking to exclude communications from

Defendants Long and Adams that were made or sent before or after they were in the position of Dean is DENIED.

5.    Plaintiff's motion seeking to exclude expert testimony from defense witnesses Erin Agidius, Brandi Terwilliger, and Lindsay Ewan, or any other defense witness is GRANTED.

6.    Defendants' Motion in Limine (Dkt. 142) and the remaining pending issues raised in Plaintiff's Motion in Limine (Dkt. 148) are otherwise DENIED.

DATED: October 5, 2022

B. Lynn Winmill
U.S. District Court Judge