UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAAKIRRAH R SANDERS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF IDAHO, COLLEGE OF LAW, et al.,<br><br>Defendants. | Case No. 3:19-cv-00225-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff's motion for sanctions for spoliation of evidence. (Dkt. 149.) For the reasons discussed below, the Court will grant the motion.

## BACKGROUND

Leading up to the winter of 2018, the University of Idaho (UI) administration received multiple complaints about the climate, culture, and work environment at the law school that included an overarching concern that gender bias and/or sex discrimination were having a disproportionate negative impact on female faculty and staff. At least some of the complaints had to do with defendant Mark Adams specifically, his leadership, and his bias in handling overall practices

MEMORANDUM DECISION AND ORDER - 1

within the law school. At the time, Adams was Dean of the law school.

In response to these complaints, the UI Provost ordered a climate & culture review be conducted at the law school. As part of that review, Jennifer Cossel interviewed 32 of the law school's faculty and staff members, including Plaintiff and two other people of color. During these interviews, which were to be kept confidential, employees shared their personal perceptions and experiences working within the law school. A number of the participants identified potential racial bias within the law school, and provided examples of times that they believed exhibited bias. Several of the participants also witnessed concerning student evaluations of professors of color, and those evaluations may have been shared with the promotion and tenure committee.

Several of the faculty member participants expressed that they felt strongly that females are disproportionately "shut down" or admonished by those in senior leadership positions, including Adams. Several participants also discussed the concern of gender bias in reference to the lack of female or diverse senior leadership at the law school and some attributed this deficit to intentional bias or implicit bias. Gender and/or racial bias was a theme during the interviews, and Cossel believed it was important for the law school to address these gender and racial bias issues.

The interviews lasted about a month. After the interviews were completed, Cossel drafted the College of Law Climate & Culture Review (CCR), which was finalized on April 17, 2018. The CCR acknowledged the severity of some of the allegations of race and/or gender discrimination raised during Cossel's interviews, and indeed stated: "[S]ome of the concerns raised during the course of the Climate & Culture Review could rise to the level of what is considered discrimination, retaliation, gender or sex discrimination." The CCR suggested that a referral to the UI's Office of Civil Rights and Investigations (OCRI) or another appropriate department may be necessary.

At issue in the pending spoliation motion are the notes Cossel took during the 32 interviews with the law school faculty and staff members and upon which the CCR is based. Cossel turned those notes over to UI's Human Resources Director after Cossel finalized the CCR on April 17, 2018. Those notes were apparently shredded approximately one week after the finalization and distribution of the CCR.

## LEGAL STANDARD

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Balla v. Idaho St. Bd. Of Correction*, 119 F. Supp. 3d 1271 (2015) (citations and quotation marks omitted).

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *see State Farm Fire & Cas. Co. v. Gen. Motors, LLC*, 542 F. Supp. 3d 1124, 1130 (D. Idaho 2021) ("where 'spoliation occurs before the litigation is filed, the sanctions are governed by the inherent power of the Court to make evidentiary rulings in response to the destruction of relevant evidence.' " (citation omitted)).

A party seeking sanctions for spoliation of evidence must prove: "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence." *Balla*, 119 F. Supp. 3d at 1282 (quoting *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1010 (C.D. Cal. 2013)).

## ANALYSIS

### A. Defendants had an obligation to preserve the evidence.

The duty to preserve relevant evidence commences prior to litigation once a defendant reasonably anticipates an action may be forthcoming. *See Silvestri v. General Motors*, 271 F.3d 583, 590 (4th Cir. 2001); *Kronish v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see also Akiona v. United States*, 938 F.2d 158, 161

(9th Cir. 1991) (defining inquiry as whether party that destroyed documents "was on notice that the [documents] had potential relevance to litigation"); *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002) (discussing when defendant has a duty to preserve records prior to commencement of litigation).

Here, the CCR provided notice to Defendants that litigation should reasonably be anticipated. The CCR states:

> Human Resources is aware of the possibility that some of the concerns raised during the course of the Climate & Culture Review could rise to the level of what is considered discrimination, retaliation, gender or sex discrimination. A referral to OCRI (Office of Civil Rights & Investigations) or another appropriate department on campus may be necessary and communication with the subject matter experts in those areas will be key.

(Dkt. 151-1 at 2; *see also id.* at 2 ("overarching concern that gender bias and/or sex discrimination plays a role by disproportionately impacting female faculty and staff negatively"); *id.* at 5 ("A number of participants identified potential racial bias within the College of Law.").

Plaintiff also confirms that during her interview for the CCR, which occurred in March 2018, "I expressed my concerns about Mark Adam's hostility towards me and the basis of my belief for that hostility (i.e., discrimination and retaliation after inquiries about adverse employment decisions with disparate impacts on me (and others) based on race and gender." (Dkt. 149-4.)

MEMORANDUM DECISION AND ORDER - 5

Finally, as Plaintiff points out, Defendants' privilege log includes communications from April 2018. (Dkt. 169-2.) This indicates that there were communications between Defendants and counsel relevant to this case in April 2018, when the CCR was issued and the interview notes destroyed. The privilege log thus provides further support to the conclusion that Defendants reasonably anticipated litigation at the time the notes were destroyed.

In sum, the information in the CCR and the interview notes upon which the CCR is based were sufficient to put Defendants on notice that they could reasonably anticipate litigation based upon allegations of gender and/or race discrimination and, further, that the interview notes may be relevant to that litigation. This is bolstered by the fact that there were attorney-client communications relevant to this case around the time that the CCR was issued and the notes destroyed. Thus, setting aside whether, as Plaintiff argues, there were UI or state policies that required Defendants to retain the interview notes, the Court finds that Defendants knew or reasonably should have known to anticipate litigation. Defendants therefore had an obligation to preserve the notes.

**B.     Defendants had a "culpable state of mind"**

"Culpable state of mind" under the spoliation test does not require "bad faith." To the contrary, sanctions for spoliation may be imposed upon a showing that there was notice of the potential relevance of the evidence to litigation. *Glover*,

6 F.3d at 1329; *see Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." (citation and quotation marks omitted)).

Here, the CCR explicitly states that it is based upon interviews, lists the faculty and staff who were interviewed, and states that concerns raised during those interviews could rise to the level of "what is considered discrimination, retaliation, gender or sex discrimination." Thus, Defendants were on notice that the information in the CCR was based on interviews, and this in turn gave notice to Defendants that any notes from those interviews would be relevant to the concerns raised in the CCR. Under these circumstances, Defendants were on notice of the potential relevance of the notes to the reasonably anticipated litigation.

### C. The destroyed notes are relevant.

The Court also finds that the destroyed interview notes are relevant to this litigation. Although the CCR summarizes what is in the interview notes, it does not provide the full contents of the 32 interview notes, nor does it provide details such as the identity of who was expressing what views. For example, it is relevant to know the race and gender of those interview participants who are expressing concern regarding bias, discrimination, and/or retaliation at the law school, as opposed to those who were not expressing such concerns. A good example of this

is in reference to the views expressed by interviewees regarding Adams. The CCR states that responses to Adams "yielded mixed responses" with "several" interviewees having "positive and supportive" responses regarding Adams but, conversely, other participants voicing serious concerns about Adams. (*See* Dkt. 151-1 at 8.) Knowing the identity, gender, and race of the participants that responded one way or another regarding Adams, as well as other issues addressed during the interviews, would be relevant to Plaintiff's gender and/or racial discrimination, retaliation, and hostile work environment claims.

Moreover, "because the relevance of…[destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon*, 464 F.3d at 959 (citations and quotation marks omitted) (alteration in original). Indeed, spoliation of evidence "raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung*, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012); *see Akiona*, 938 F.2d at 161 ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case.").

The Court finds that the notes from the underlying interviews were presumably relevant to Plaintiff's case and, further, that such evidence was

presumably adverse to Defendants. The Court therefore finds that Defendants spoliated evidence when they destroyed the notes.

### D.     Plaintiff's motion for spoliation is timely.

Defendants argue that Plaintiff's motion should be denied as untimely because Plaintiff did not move for spoliation sanctions during the discovery phase of this case. The only authority cited by Defendants in support of their argument is *Sherwood v BNSF Railway Co.*, Case No. 2:16-cv-8-BLW, 2019 WL 1413747 (D. Idaho Mar. 3, 2019).

In *Sherwood*, the plaintiff did not file a spoliation motion until the eve of trial. *Id.* The Court noted that the plaintiff had failed to file a spoliation motion during discovery despite earlier direction from Judge Lodge (who was then presiding over the case) that the spoliation issue should be raised in the context of a discovery motion. *Id*. at *1.  The Court then explained why timing of the request for spoliation sanctions is significant: "All spoliation sanctions are extreme in effect. That is why a court, upon finding prejudice, 'may order measures no greater than necessary to cure the prejudice.'" *Id.* (quoting Fed. R. Civ. P. 37(e)(1)). "This, in turn, requires that a judge consider a full range of options, including ordering additional discovery that may remedy the loss of evidence, permitting additional depositions, or working with counsel to find other means of curing the prejudice without affecting the substantive rights of the parties." *Id.* "However, those options

can only be undertaken while discovery is still ongoing, and can almost never be considered or applied on the eve of trial. It is for that reason that Judge Lodge urged the parties to submit the issue to the court in a separate motion" during discovery. *Id.* This would have given the Court "an additional reason to reject [the plaintiff's] request on the eve of trial that he be permitted to offer spoliation evidence and the jury be given an adverse inference instruction." *Id.* However, the Court had already concluded "that a spoliation sanction was unwarranted in this case, even if it had been requested in a timely manner." *Id.*

Defendants urge the Court, based on *Sherwood*, to deny as untimely Plaintiff's motion for spoliation sanctions. However, as Plaintiff points out, Defendants did not inform Plaintiff that they had shredded the notes until September 2020, and did not confirm in writing that the notes had been shredded until three days after discovery closed in November 2020. Given this timing, Defendants' position that Plaintiff should have filed her motion for spoliation during discovery is unreasonable.

Moreover, even if Plaintiff had been informed of the spoliation in time to file a spoliation motion during discovery, the Court is not convinced that there would have been an alternative remedy available. Although Defendants state that additional discovery specific to this issue could have been ordered, they do not

point to what additional discovery would have served as a remedy to the destruction of the interview notes. Simply put, there is no way to re-create notes which have been destroyed. Further, unlike *Sherwood*, this is not a situation where the Court has directed a party to file the motion during discovery and the party failed to follow that direction. And Cossel—the individual who conducted the interviews and created the notes—testified during her deposition that she does not remember who said what during the interview, further supporting the conclusion that additional discovery would not have remedied the loss of the notes.

Although, in general, the Court agrees with Defendants' position that motions regarding spoliation should be filed during discovery, because of the timing of the disclosure by Defendants of the spoliation, requiring a motion during discovery is not reasonable. Under these circumstances, the issue of spoliation—and relatedly, whether to issue an adverse inference jury instruction—is appropriately brought in a motion in limine. *See, e.g., Badger v. Wal-Mart Stores, Inc.*, No. 2:11-CV-1609-KJD-CWH, 2013 WL 3297084, at *8 (D. Nev. June 28, 2013); *Smith v. UPS*, No. 2:08-CV-01313-RCJ-RJJ, 2010 WL 11538044 (D. Nev. Feb. 16, 2010); *Bordegaray v. Cty. of Santa Barbara*, No. 2:14-cv-8610-CAS(JPRx), 2016 WL 7260920, at *5-6 (C.D. Cal. Dec. 13, 2016). The Court finds Plaintiff's motion for spoliation sanctions to be timely.

### E. The appropriate remedy for the spoliation is an adverse inference instruction.

Where, as here, a party is found to have spoliated evidence, the court must then determine whether and which sanctions are appropriate. *See Apple*, 888 F. Supp. 2d at 992. Because the Court finds that sanctions are appropriate, the remaining question is the severity of the sanctions.

The Court has wide discretion in imposing sanctions, which "can range in severity from minor sanctions, such as awarding attorneys' fees, to more severe sanctions including permitting a jury to draw an adverse inference against a party responsible for the destruction of evidence, ordering the exclusion of evidence, or even dismissal of claims." *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*, No. 1:17-cv-519-DCN, 2019 WL 2236080, at *6 (D. Idaho May 21, 2019). The choice of an appropriate sanction "must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence and the degree of prejudice suffered by the movant." *Balla*, 119 F. Supp. 3d at 1282 (citation and internal quotation marks omitted). In selecting an appropriate remedy, courts are to choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Apple,* 888 F. Supp. at 992.

Here, Plaintiff requests a sanction of an adverse inference instruction. The

Court finds that sanction to be appropriate. First, the Court finds that Plaintiff was prejudiced by the destruction of the notes. Because the information has been destroyed, there is a "a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Id.* at 998; *see Leon*, 464 F.3d at 959 (because the relevance of…[destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents." (citations and quotation marks omitted) (alteration in original)). Further, although, as Defendants argue, the notes were summarized in the CCR, the CCR is not a substitute for the notes themselves, which had more complete details of what was said and who said it (including their gender and race). Moreover, the preparation of any report based upon the author's notes inherently calls for some culling in the drafting and editing process. The original notes would have been relevant to the issues of discrimination and retaliation, general discriminatory animus, and the culture of the workplace in general.

Second, the Court finds, under the circumstances, that the destruction of the evidence was willful. " 'A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the evidence was potentially relevant to the litigation before it was destroyed.' " *State Farm Fire & Cas. Co.*, 542 F. Supp.

3d at 1131 (citations omitted).[1]

Here, as discussed previously, the CCR put Defendants on notice of the possibility of litigation, stating clearly that the interviews revealed concerns that "could rise to the level of what is considered discrimination, retaliation, gender or sex discrimination." The CCR further stated that a referral to OCRI or another appropriate department may be necessary. The CCR was based on interviews with law school faculty and staff, and the notes from those interviews. The content of the CCR thus put Defendants on notice that the interview notes containing the underlying information was relevant to potential litigation. Yet, despite this notice, and suggested referral to OCRI or another appropriate department, Defendants proceeded to destroy the interview notes. Added to this is the fact that, around the time the notes were destroyed, Defendants were engaging in attorney-client privileged communications relevant to this case.

The Court finds, under these circumstances, that Defendants had notice that the notes were potentially relevant to litigation they reasonably should have known

---

[1] Defendants rely on the Court's former decision in *Sherwood*, 2019 WL 1413747, to argue that a finding of intent to deprive the other party of the use of the destroyed evidence is required for sanctions to be imposed. To the extent such an intent is required, the Court finds, under the circumstances at issue here, the requisite intent exists.

would be forthcoming and thus that the destruction of the notes was willful.[2]

Finally, turning to the appropriate sanction, the Court finds an adverse inference instruction to be appropriate. The spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. *Apple*, 888 F.Supp.2d at 998. An adverse inference instruction would help to "ameliorate any prejudice to [Plaintiff] by filling the evidentiary gap created by [Defendants] that destroyed evidence." *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017) (citation omitted); *see Akiona*, 938 F.2d at 161 ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case.").

Further, the Court does not find that a less onerous sanction would be sufficient to address the destruction of the notes and the prejudice suffered by Plaintiff. *See Glover*, 6 F.3d at 1329 (Only a "minimum link of relevance" is required to permit the use of an adverse inference instruction).

---

[2] The Court acknowledges that Defendants have submitted evidence indicating that the destruction of the notes was pursuant to a UI Human Resources standard operating procedure followed with other culture and climate reviews. However, this does not take away from the willfulness under the circumstances at issue here. To hold otherwise would allow the destruction of relevant evidence to go unpunished as long as there was some protocol in place that provided for automatic destruction without consideration of the surrounding circumstances.

Finally, the Court finds that a permissive, rather than mandatory, adverse inference instruction is appropriate. A permissive adverse inference instruction is "the least harsh instruction [in that it] permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Apple*, 881 F. Supp. 2d at 1150 (citation and quotation marks omitted). The Court will provide the parties with an opportunity to propose an appropriate instruction.

## ORDER

IT IS ORDERED that Plaintiff's motion for spoliation sanctions (Dkt. 149) is GRANTED. The parties may submit for the Court's consideration a proposed permissive adverse inference instruction.

DATED: October 7, 2022

B. Lynn Winmill
U.S. District Court Judge