UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAAKIRRAH R. SANDERS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF IDAHO, COLLEGE OF LAW, a public university governed by the State Board of Education, et al.,<br><br>Defendants. | Case No. 3:19-CV-00225-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff Shaakirrah Sander's Second Motion to Change Venue (Dkt. 214) and Defendants' Motion to Reconsider (Dkt. 217). For the reasons set forth below, the Court will grant Sanders' Second Motion to Change Venue and deny Defendants' Motion to Reconsider.

## BACKGROUND

Plaintiff Shaakirrah R. Sanders filed her initial complaint in this action in June 2019, against the University of Idaho College of Law and Mark Adams in his

Memorandum Decision and Order - 1

official capacity as the former Dean of the College of Law. (Dkt. 1). Sanders later added former Dean of the College of Law Jerrold Long as a defendant. The College of Law has two campuses: one in Moscow, which is the main campus, and one in Boise. Defendants Mark Adams and Jerrold Long work at the Moscow campus, and both live in or around Moscow. Sanders lives in Ada County, and has worked at the Boise campus since 2014.

When Sanders filed her original complaint, she attempted to select the Southern Division as the place of venue, but the Clerk's office reassigned the case to the Central Division pursuant to Local Rule 3.1, which provides that the Clerk will assign the case to one of the four divisions upon the filing of the complaint unless otherwise ordered by the presiding judge. Dist. Idaho Loc. Civ. R. 3.1. Although not part of the Local Rule, the Court's policy is to assign a case to the division where the defendants reside, which, for this case, is the Central Division. It should be noted that cases assigned to the Central Division were historically heard in the Moscow Courthouse, but that the lack of cases in the Central Division led the Court to close that courthouse and to handle all cases from the Central Division in the Coeur d'Alene Courthouse, some 85 miles from Moscow.

The parties litigated matter in the Central Division for more than two and half years, primarily handling disputed matters remotely by using a streaming

video service because of the COVID pandemic. However, after the matter was set for trial at the Coeur d'Alene courthouse, Sanders filed a Motion to Change Venue requesting that the Court reassign the case to the Southern Division for purposes of trial. *See* Dkt. 86. The Court denied the Motion, finding "no compelling reason to change venue," *see* Dkt. 112, and this case was tried in Coeur d' Alene from October 11 through October 24, 2022. The jury was unable to reach a unanimous verdict, and a mistrial was declared.

On November 15, 2022, the Court held a status conference to set a new trial date. The day prior to that status conference, Sanders filed a second motion to change venue from the Central Division to the Southern Division based, in part, on the Court's pretrial decision excluding six of Defendants' proposed trial witnesses as untimely disclosed. As a decision on the renewed motion to change venue affects where trial will be held – Coeur d' Alene versus Boise – which, in turn, affects when trial will be set, the Court ordered expedited briefing on the motion to allow the motion to be decided expeditiously and a trial date set. Intertwined with the venue issue is the Court's prior decision excluding six defense witnesses, which decision Defendants have moved to reconsider. The Court also ordered expedited briefing on Defendants' motion to reconsider. Both motions are now ripe for disposition and addressed, in turn, below.

Memorandum Decision and Order - 3

## ANALYSIS

**1. Motion to Reconsider Order Excluding Witnesses**

Defendants ask the Court to reconsider its decision excluding six witnesses as untimely disclosed in violation of Federal Rule of Civil Procedure 26(a) and (e). Rule 26(a) requires parties to provide to other parties "the name ... of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). And "[a] party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure" in a "timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)." Disclosures under Rule 26(a) are untimely if made after the discovery cutoff." *Schwartz v. Clark Cnty., Nevada, No.* 213CV709JCMVCF, 2018 WL 1627806, at *2 (D. Nev. Apr. 4, 2018) (citing *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014)).

A party that does not timely identify a witness under Rule 26 may not use that witness to supply evidence at a trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001). "Rule 37(c)(1), as

Memorandum Decision and Order - 4

implemented through the 1993 amendments, was intended to foster stricter adherence to discovery requirements and to broaden the power of the district courts to sanction violations of Rule 26." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). "Indeed, Rule 37(c)(1) is 'intended to put teeth into the mandatory ... disclosure requirements' of Rule 26(a) and (e)." *Ollier*, 768 F.3d at 863 (citing 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2289.1 (3d ed.2014)).

"Factors the court may consider in determining whether a violation of the discovery deadline was justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Schwartz v. Clark Cnty., Nevada*, No. 213CV709JCMVCF, 2018 WL 1627806, at *3 (D. Nev. Apr. 4, 2018) (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010)). It is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with Rule 26 disclosure requirements was either justified or harmless. *Yeti by Molly*, 259 F.3d at 1107.

In its prior decision, the Court found Defendants failed to show that their

Memorandum Decision and Order - 5

failure to disclose the six witness it sought to present at trial, either initially or by timely supplementation, was either justified or harmless. Instead, Defendants argued that Sanders was made aware of these six witnesses during discovery and thus Sanders was placed on notice that these six individuals may be called at trial.

Defendants reprise this same argument in their motion to reconsider. But, as explained by the Court in its prior decision, Defendants' production included more than 70,000 pages of documents, the depositions of nine different defense witnesses, eight 30(b)(6) defense designees, and the deposition of Sanders; therefore, Sanders could not "be expected to comb through this extensive discovery and guess which of the multitude of people mentioned may be called by Defendants as a witness." *Memorandum Decision and Order*, p. 4, Dkt. 167 (citing *Ollier*, 768 F.3d at 863). Indeed, [t]he Ninth Circuit has held that disclosure of a witness after the discovery deadline when the identity of that witness is known throughout [discovery] amounts to the gamesmanship Rule 37(c) seeks to prevent." *Schwartz*, 2018 WL 1627806, at *2 (citing *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014)). Defendants offer no reason – no newly discovered evidence, no intervening change in the law, no clear error or manifest injustice – for the Court to reconsider this conclusion. *See, e.g., Cummings v. Stewart Title Guaranty Co.*, No. 4:15-cv-00599-BLW, 2020 WL 4455110, *1 (D.

Idaho August 3, 2020) (noting "reconsideration may be warranted: (1) because of newly discovered evidence; (2) because the Court committed clear error or the order was manifestly unjust; or (3) due to an intervening change in the law"). The Court therefore declines to reconsider its decision on these grounds.

Defendants also argue "that the claimed prejudice is now easily remedied" by allowing "a limited re-opening of discovery, to whatever extent the Court deems necessary, to allow Sanders to avoid being surprised by whatever testimony these witnesses present whenever the matter is retried." *Defs' Opening Br.*, p. 5, Dkt. 218. Sanders responds that reopening discovery not only would gut the purpose of Rule 26's disclosure requirements but would also defeat the purpose of Rule 1 to secure a "just, speedy, and inexpensive determination." *Sanders's Resp.*, pp. 7-9, Dkt. 219 (citing Fed. R. Civ. P. 1). Sanders maintains that allowing these six witnesses to testify at trial would not only result in the need for conducting these six witnesses' depositions but would also require that other witnesses be deposed or re-deposed and would also create the need for additional interrogatories and requests for production. This additional discovery, Sanders argues, would result in substantial expense for both parties. *Id.* It very likely would also result in a longer trial.

Defendants offer no rebuttal to this argument other than to say that Rule 1

applies to both Sanders and Defendants, and it would be "extremely just for Defendants to be able to present a complete defense as opposed to the incomplete version of the case Defendants were required to present in the first trial." *Defs' Reply*, p. 4, Dkt. 220. But this argument ignores that Defendants failed to meet their supplementation obligations under Rule 26(a) and (e), and this failure was neither substantially justified nor harmless – creating the situation they now face. "Sanctioning this argument would force [the Court] to read the supplementation requirement out of Rule 26(e)." *Ollier*, 768 F.3d at 863 (refusing to reopen discovery to allow the depositions of late-disclosed witnesses ten months before trial reopening because "reopening discovery would have had the same costly and disruptive effects"). Like the Ninth Circuit in *Ollier*, the Court "will not do that." *Id.*

    2. **Second Motion to Change Venue**

Defendants renew their motion to change venue from the Central Division to Southern Division on the grounds "that a second trial in the Southern Division: 1) will significantly reduce the overall costs associated with a second trial; 2) be more convenient for the majority of third-party witnesses, including witnesses travelling from out-of-state; and, 3) honors Sanders's original choice of venue." *Pl's Opening Br.*, p. 6, Dkt. 214-1.

"Under 28 U.S.C. § 1404(c), a district court has discretion to order any civil

Memorandum Decision and Order - 8

action to be tried at any place within the division in which it is pending." *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1097 (D. Colo. 2006); *see also* 28 U.S.C. § 1404(c). As the Court noted in its prior decision, the primary factors courts consider in deciding whether to transfer a civil action to another division is the convenience of the parties and the witnesses. *Memorandum Decision and Order re Venue*, p. 4, Dkt. 112 (citing 28 U.S.C. § 1404(a) and (b)). Also as noted in its prior decision, other factors the Court may consider include:

> (1) Sanders's choice of forum; (2) the location of defendants' residences; (3) the respective parties' contacts with the forum, (4) situs of events giving rise to the lawsuit; (5) the difference in the costs of litigation in the two forums; (6) accessibility of witnesses and other sources of proof; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) any other practical issues.

*Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) and *Four Corners Nephrology*, 464 F. Supp. 2d at 1098). The Court has considerable discretion in deciding a motion to transfer after considering the relevant factors. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The burden is on the party requesting the transfer to show that the balance of conveniences heavily favors the transfer. *Decker Coal*, 805 F.2d at 843.

The Court considered these factors in determining that "Sanders ha[d] not met her burden in showing in showing the balance of conveniences heavily favors

Memorandum Decision and Order - 9

the transfer from the Central Division to the Southern Division." *Memorandum Decision and Order re Venue*, p. 4, Dkt. 112. In reaching this decision, the Court accorded little weight to Sanders' choice of forum as she is subject to the District of Idaho Local Rules and Court policy, which fix venue in the Central Division based on the residence of the defendants. *Id.* In addition, the Court noted that Sanders had chosen to litigate the case for over two years with venue in the Central Division. And, of particular importance to Sanders' renewed motion, the Court found that "[t]he location of the witnesses also [did] not tip in favor of transferring venue to the Southern Division," and that Sanders had failed to show that it would be substantially less expensive for the parties if the trial is held in Boise as it "would merely shift, rather than eliminate, the inconvenience and costs," and therefore transfer of venue was not appropriate. *Id.* (citing *Lafky Properties, LLC v. Glob. Credit Union*, No. 1:19-CV-00413-DCN, 2020 WL 1627332, at *1 (D. Idaho Apr. 2, 2020)).

In asking the Court to reconsider its decision denying the motion to transfer venue to the Southern Division, Sanders notes that "trial in Coeur d'Alene required both sides to pay for multiple people (four on the Sanders's side, and five on the Defendants' side) to travel, eat and sleep near the courthouse over the course of the two-week trial," and thus both sides incurred substantial travel costs in holding the

trial in Coeur d' Alene. *Pl's Opening Br.*, p. 6, Dkt. 214-1. Therefore, Sanders maintains, it is not accurate to say it simply shifts costs to hold trial in Boise because Sanders and her counsel would not incur any travel costs if trial were held in Boise, as all reside there, as opposed to Coeur d'Alene, where none of the parties nor their counsel reside. In addition, if Sanders were to prevail, Defendants would have to pay her costs, and therefore a reduction in Sanders' travel costs could potentially benefit Defendants as well.

Sanders further notes that "[o]f the non-party witnesses that testified in the first trial, two (2) travelled from Boise, three (3) travelled from out-of-state, four (4) travelled from Moscow, and two (2) appeared remotely (but would have preferred to testify in person which would have meant travel from out-of-state)." *Id.* As Sanders point out, if the same witnesses testify at the second trial, five of those witnesses would be travelling from out-of-state, which, on the whole, would likely be less expensive and less burdensome for them if the trial were held in Boise because the Boise airport is minutes away from the federal courthouse in Boise while the nearest airport to the Coeur d' Alene Courthouse is in Spokane – 45 minutes away. Two of those witnesses who reside in Boise would incur no travel expenses, and the four Moscow witnesses would have to travel regardless – although they would have to travel substantially farther to testify in Boise versus

Memorandum Decision and Order - 11

Coeur d' Alene (85 miles versus 295 miles).

In short, the overall travel costs for seven of the witnesses would be less if trial were held in Boise versus Coeur d' Alene while the remaining four are UI employees and therefore their inconvenience may be afforded less weight. *See e.g., STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (citing *Galonis v. National Broadcasting Co., Inc.*, 498 F. Supp. 789, 793 (D.N.H. 1980) (discount inconvenience to party's witnesses when they are employees who can be compelled to testify)). Defendants are also able to better absorb the upfront costs of their employees travelling to testify. *Galonis*, 498 F. Supp at 793 (the court may take into account the financial strength of each party). Additionally, for the most part, the relevant, substantive scope of the Moscow witnesses was relatively minor compared to many other witnesses, such that they may be able to testify remotely. *See Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 17-4977 PSG (SKX), 2018 WL 5099708, at *3 (C.D. Cal. Jan. 9, 2018) ("When considering convenience of the witnesses, the court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case.").

Upon reconsideration, the Court has now had the opportunity to see, firsthand, the relative inconvenience of trying the case in Coeur d'Alene, rather

Memorandum Decision and Order - 12

than in Boise. It now appears obvious that both the convenience of the witnesses and the difference in the costs of litigation in the two forums favors trial being held in Boise. In addition, to the extent the Court considers Sanders' choice of forum and where events giving rise to the lawsuit took place, these factors also slightly favor Sanders. The Court would most likely reach a different conclusion if the case could be tried in Moscow; but the courthouse for the Central Division is now in Coeur d' Alene, which requires every single witness, the parties, and their counsel to travel and incur the related expenses. Thus, upon further reflection and with a further understanding of the witnesses testifying at trial and the scope of their testimony, the Court will grant Sander's motion to transfer the location of trial to the Southern Division. *Cf. Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) ("The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)," and "[t]he convenience of non-party witnesses is a more important factor than the convenience of party witnesses.").

## ORDER

**IT IS ORDERED that**:

1. Plaintiff Shaakirrah Sander's Second Motion to Change Venue (Dkt. 214) is **GRANTED**.

2. Defendants' Motion to Reconsider (Dkt. 217) is **DENIED.**

DATED: December 14, 2022

_B. Lynn Winmill_
B. Lynn Winmill
U.S. District Court Judge